ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**22 CRIM 019**

- - - - - - - - - - - - - - - - - -X
                                    :
UNITED STATES OF AMERICA
                                    :      SEALED INDICTMENT
        -v-
                                    :      22 Cr.  (    )
BRADLEY PIERRE,
MARVIN MOY,                         :
WILLIAM WEINER,
ANDREW PRIME, and                   :
ARTHUR BOGORAZ,
                                    :
            Defendants.
- - - - - - - - - - - - - - - - - -X

## COUNT ONE
### (Conspiracy to Commit Healthcare Fraud)

### Overview of the Scheme

The Grand Jury Charges:

1.     From at least in or about 2008 up to and
including in or about 2021, BRADLEY PIERRE, MARVIN MOY, WILLIAM
WEINER, ANDREW PRIME, and ARTHUR BOGORAZ (the "Pierre
Conspirators" or the "Conspirators"), the defendants, and others
known and unknown, participated in a criminal scheme to exploit
insurance programs designed to protect motor vehicle accident
victims (the "No-Fault Scheme").

2.     As part of the No-Fault Scheme, the Pierre
Conspirators fraudulently owned and controlled five medical
professional corporations – including clinics and an MRI
facility – by paying licensed medical professionals to use their

licenses to incorporate the professional corporations
(collectively, the "No-Fault Facilities" or the "Facilities").
The Pierre Conspirators further defrauded automobile insurance
companies by billing insurance companies for unnecessary and
excessive medical treatments, falsifying clinical findings of
injuries in MRIs, and lying under oath to insurance company
representatives.

3.    The Pierre Conspirators promoted the scheme
through bribery. The Pierre Conspirators paid hundreds of
thousands of dollars to co-conspirators (the "Runners"), who
used this money pay bribes to 911 operators, hospital employees,
and others (collectively, the "lead sources") for confidential
motor vehicle accident victim information.  The Runners then
used this information to contact automobile accident victims,
lie to them, and induce them to seek medical treatment at, among
other places, the No-Fault Facilities.

4.    The Pierre Conspirators laundered the proceeds of
the fraud through phony lending agreements, check-cashing
entities, and shell companies. All told, the Pierre Conspirators
billed insurance companies for more than $70 million in
fraudulent medical treatments.

### Overview of No-Fault Motor Vehicle Insurance

5.    At all times relevant to this Indictment, New
York State Law required every vehicle registered in New York

State to have no-fault automobile insurance, which enabled the driver and passengers of a vehicle registered and insured in New York State to obtain benefits of up to $50,000 per person for injuries sustained in an automobile accident, regardless of fault (the "No-Fault Law").  The No-Fault Law required payments for medical treatments to be made promptly, thereby obviating the need for vehicle occupants (the "Patients") to file personal injury lawsuits in order to be reimbursed for medical treatment. Under the No-Fault Law, the Patients could assign their right to reimbursement from an insurance company to others, including, but not limited to, medical clinics that provided medical services to treat their injuries.  If such an assignment were made, the medical clinics, or their agents, would bill the insurance company directly for services rendered and received payments directly from the insurance company.  Typically, insurance companies compensate the medical practitioners at a fixed rate for various medical services performed on these accident victims.  In order to obtain damages separate and apart from the $50,000 allowed by the No-Fault Law, a Patient could file a personal injury claim and/or lawsuit in order to show that the occupant sustained a "serious injury," as defined by New York State Law, as a result of the accident.

    6.    At all times relevant to this Indictment, pursuant to New York State Law, all medical clinics in New York

State must have been incorporated, owned, operated, and/or controlled by a licensed medical practitioner in order to be eligible for reimbursement under the No-Fault Law. Insurance companies would deny all billings for medical treatments from a medical clinic that was not actually owned, operated and controlled by a licensed medical practitioner.

### Entities and Individuals Involved in the Scheme

7. **Bradley Pierre:** BRADLEY PIERRE, the defendant, is the leader and organizer of the Pierre Conspirators and the No-Fault Scheme. PIERRE – who is not a licensed medical practitioner - owned, operated, and controlled the No-Fault Facilities that engaged in the fraudulent billing for unnecessary and excessive medical treatment under the No-Fault Law, and falsified findings of clinical injury in MRIs. PIERRE engaged in multiple types of money laundering to conceal the proceeds of the No-Fault Scheme and financed a widespread bribery and kickback scheme to bring patients into the Facilities.

8. **The No-Fault Physicians:** The No-Fault Physicians are licensed medical physicians who gave control of their medical practices to BRADLEY PIERRE, the defendant, engaged in unnecessary and excessive medical treatments, and falsified clinical findings of injury in reports. The No-Fault Physicians fall into two groups.

4

a.   **The No-Fault Doctors**: The No-Fault Doctors incorporated the medical clinics that conducted initial evaluations of Patients and prescribed specialized care such as prescription pharmaceuticals, durable medical equipment, and MRIs ("the No-Fault Clinics"). The No-Fault Doctors include, among others, MARVIN MOY, the defendant, who incorporated the medical clinic Rutland Medical PC ("Rutland") as part of the scheme. MOY conducted unnecessary and excessive medical treatments under the No-Fault Law.

b.   **The Specialists**: The Specialists are licensed physicians who conducted the specialized medical care prescribed by the No-Fault Clinics, such as MRIs and X-rays. The Specialists include, among others, WILLIAM WEINER, the defendant, who is a licensed doctor of osteopathy who incorporated the MRI facility Nexray Medical Imaging PC ("Nexray" or the "MRI Facility") as part of the scheme. WEINER falsified clinical findings of injury in MRI reports that were submitted to insurance companies.

9.   **The Personal Injury Attorneys**: The Personal Injury Attorneys are licensed attorneys who file personal injury lawsuits on behalf of Patients who sustained "serious injury" because of an accident. The Personal Injury Attorneys typically are not paid upfront by Patients but instead receive a percentage of any settlement or judgment. ARTHUR BOGORAZ, the

5

defendant, is a paralegal and manager at a New York-based personal injury law firm ("Law Firm-1"). BOGORAZ is not an attorney. However, BOGORAZ engaged in a *quid pro quo* whereby BRADLEY PIERRE, the defendant, sent patients from the No-Fault Facilities to Law Firm-1 for legal representation in return for BOGORAZ referring clients to the No-Fault Facilities for medical treatment. In addition, BOGORAZ and PIERRE agreed to jointly pay bribes for patient and client referrals to the No-Fault Facilities and Law Firm-1.

    10.   **The Runners:** The Runners pay bribes to employees or agents of hospitals, medical service providers, police officers and 911 operators employed by the New York Police Department ("NYPD"), and other entities (collectively, the "lead sources"). These lead sources in turn unlawfully disclosed the protected, confidential information of tens of thousands of motor vehicle accident victims in New York, New Jersey, and elsewhere.  After obtaining the confidential information of motor vehicle accident victims -- which often included victims' names, contact information, and medical information -- the Runners contacted the victims and made false representations to steer the victims to receive medical treatment or legal representation at the No-Fault Facilities, Law Firm-1, and other medical clinics and attorney's offices. ANDREW PRIME, the

defendant, is a Runner that bribed 911 operators and operated a
call center as part of the scheme.

### Means and Methods of the No-Fault Scheme

11.   The co-conspirators used various means and
methods to carry out the scheme.

### The Fraudulent No-Fault Facilities

12.   In order to take advantage of the patient-
friendly provisions of the No-Fault Law, BRADLEY PIERRE, the
defendant recruited medical practitioners to open at least five
No-Fault Facilities between in or about 2008 up to and including
2021. These Facilities fell into two groups: the No-Fault
Clinics that conduct initial evaluations of Patients and
prescribed specialized care, and the MRI Facility that provides
medical imaging services.

13.   The scheme began with the No-Fault Clinics. While
purporting to be legitimate medical care clinics specializing in
treating patients, the No-Fault Clinics were not owned,
operated, and controlled by licensed medical practitioners as is
required by law. Instead, BRADLEY PIERRE, the defendant, was the
actual owner, operator, and controller of Clinics. For instance,
PIERRE received the majority of the Clinics' proceeds and
decided how much the nominal owners would be paid; possessed the
checkbooks and pre-signed checks from the Clinic's bank
accounts; controlled the debit and credit cards for the Clinics;

controlled hiring and firing of the Clinic's employees; invested the initial funds to establish the Clinics; identified the locations for the Clinics; negotiated the rent for the Clinics' leases; and chose the attorneys that would represent the Clinics in arbitration, litigation, and sworn depositions before insurance companies.

14.   BRADLEY PIERRE, the defendant, further arranged for the No-Fault Clinics to use MARVIN MOY, the defendant, to conduct painful and medically unnecessary electrodiagnostic testing on Patients, including electromyography ("EMG") and nerve conduction velocity ("NCV") testing.

15.   BRADLEY PIERRE, the defendant, profited every step of the way. In addition to receiving the majority of the proceeds of the No-Fault Clinics, PIERRE required the No-Fault Clinics to refer Patients to a network of pharmacies, attorneys, and medical specialists handpicked by PIERRE for one reason - they paid PIERRE millions of dollars for illegal referrals.

16.   Although BRADLEY PIERRE, the defendant, had a network of attorneys who paid kickbacks for patients – including Law Firm-1 - PIERRE principally steered patients to a personal injury law firm owned by a family member ("Law Firm-2"). PIERRE conducted much of the No-Fault Scheme from his physical office located in Law Firm-2, where among other things he monitored the No-Fault Clinics using closed circuit TV cameras, communicated

8

with co-conspirators using the Firm's email domain, and met with the No-Fault Doctors in Law Firm-2's offices. PIERRE further openly communicated with Law Firm-2 about the scheme, for instance telling his family member, "I'm going to make sure you ALWAYS make your quota." Law Firm-2 paid PIERRE over $4 million in connection with the No-Fault Scheme - typically from Law Firm-2's Interest on Lawyers Trust Accounts ("IOLA Accounts") - while maintaining no documentation or ledgers identifying the purpose of these payments.

17.   BRADLEY PIERRE, the defendant, further profited by steering hundreds of Patients from the Clinics to Nexray, the MRI Facility under PIERRE's control. Like the Clinics, Nexray purported to be operated and controlled by a licensed physician – WILLIAM WEINER, the defendant. In practice, however, PIERRE received the majority of Nexray's proceeds; controlled Nexray's bank accounts; influenced the hiring and firing of Nexray's employees; identified the locations for Nexray's facilities; negotiated the rent for Nexray's leases; and chose the attorneys that would represent Nexray in arbitration, litigation, and sworn depositions before insurance companies. PIERRE further arranged for a network of no-fault doctors and attorneys to refer patients to Nexray for medical care – oftentimes through bribery - in addition to the No-Fault Clinics under his control.

18.   In order to boost these referrals, BRADLEY PIERRE and WILLIAM WEINER, the defendants, agreed to falsify clinical findings of injuries on MRI reports and pressure radiologists working for Nexray to exaggerate findings of injuries in their own reports. These false clinical findings, in turn, allowed referring physicians and attorneys to bill for additional benefits under the No-Fault Law and obtain larger legal settlements and judgments.

19.   BRADLEY PIERRE, the defendant, further arranged for the No-Fault Physicians, including MARVIN MOY and WILLIAM WEINER, the defendants, to lie under oath to insurance companies to conceal the healthcare fraud scheme. Under the No-Fault Law, insurance carriers have the right to subject medical providers to Examinations under Oath ("EUOs") when they suspect that providers have submitted fraudulent claims. During the process, the physician is placed under oath and asked questions relevant to the claim at hand, including whether the medical practice is under the control of nonphysicians. PIERRE and the No-Fault Physicians were aware that insurance companies would deny reimbursement for the No-Fault Facilities if the No-Fault Physicians testified truthfully about the medical necessity of treatments and PIERRE's control of the Facilities. PIERRE accordingly arranged for the No-Fault Physicians to falsely state under oath, among other things, that PIERRE was solely a

lender for the No-Fault Facilities and PIERRE played no role in referring patients to the No-Fault Facilities.

### Money Laundering

20. The Pierre Conspirators laundered the proceeds of the No-Fault Scheme described above to conceal the operation. In order to conceal his receipt of the No-Fault Scheme proceeds, BRADLEY PIERRE, the defendant, caused the No-Fault Facilities to transfer the proceeds from the scheme to Medical Reimbursement Consultants ("MRC"), a company he controlled. The payments were falsely described as loan repayments.

21. As part of these phony financing arrangements, BRADLEY PIERRE, the defendant, purportedly gave loans to MARVIN MOY and WILLIAM WEINER, the defendants, in return for a percentage of any money later paid by insurance companies. In reality, MOY and WEINER paid PIERRE in excess of $10 million of what PIERRE was entitled to receive under the phony agreements.

22. BRADLEY PIERRE, the defendant, further concealed payments from the No-Fault Facilities to MRC by using check cashers, transferring funds to shell companies under his control, and arranging for funds to be paid to a family member ("Sibling-1").

### Bribery

11

23. The No-Fault Scheme depended on the No-Fault Facilities receiving a steady supply of motor vehicle accident victims.

24. As part of the scheme, BRADLEY PIERRE and ARTHUR BOGORAZ, the defendants, arranged for the Runners, including ANDREW PRIME, the defendant, to bribe employees or agents of public and private institutions, including hospitals and the NYPD, to unlawfully disclose the protected, confidential information of tens of thousands of motor vehicle accident victims in New York, New Jersey, and elsewhere.

25. After obtaining the confidential information of motor vehicle accident victims, the Runners contacted the victims and made false representations in order to steer victims to receive medical treatment from the No-Fault Facilities, and legal representation from Law Firm-1 and Law Firm-2.

26. BRADLEY PIERRE, the defendant, paid the Runners approximately $1,500 to $3,000 per successful "referral" to a No-Fault Clinic, $700 to $1,500 per successful "referral" to Law Firm-2, and $150 per successful "referral" to Nexray. ARTHUR BOGORAZ, the defendant, likewise paid the Runners $700 to $1,500 per successful referral to Law Firm-1. The Runners then took a portion of the kickbacks for themselves and funneled the rest of the money to the lead sources that provided the confidential information.

12

## Statutory Allegation

27.   From at least in or about 2008, up to and
including in or about 2021, in the Southern District of New York
and elsewhere, BRADLEY PIERRE, MARVIN MOY, and WILLIAM WEINER,
the defendants, together with others known and unknown, did
willfully and knowingly combine, conspire, confederate, and
agree together and with each other to commit health care fraud,
in violation of Title 18, United States Code, Section 1347.

28.   It was a part and an object of the conspiracy
that BRADLEY PIERRE, MARVIN MOY, and WILLIAM WEINER, the
defendants, and others known and unknown, willfully and
knowingly, would and did execute and attempt to execute a scheme
and artifice to defraud a health care benefit program, and to
obtain, by means of false and fraudulent pretenses,
representations, and promises, money and property owned by, and
under the custody and control of a health care benefit program
in connection with the delivery of and payment for health care
benefits, items and services.

(Title 18, United States Code, Section 1349.)

### COUNT TWO
### (Conspiracy to Commit Money Laundering)

The Grand Jury further Charges:

13

29.   The allegations set forth in paragraphs 1 through 26 of this Indictment are repeated and realleged as if fully set forth herein.

30.   From at least in or about 2008, up to and including in or about 2021, in the Southern District of New York and elsewhere, BRADLEY PIERRE, MARVIN MOY, and WILLIAM WEINER, the defendants, together with others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

31.   It was a part and object of the conspiracy that BRADLEY PIERRE, MARVIN MOY, and WILLIAM WEINER, and others known and unknown, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), to wit, the proceeds of healthcare fraud, in violation of 18 U.S.C. § 1347, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

14

**COUNT THREE**
**(Conspiracy to Commit Travel Act Bribery)**

The Grand Jury further Charges:

32.   The allegations set forth in paragraphs 1 through 26 of this Indictment are repeated and realleged as if fully set forth herein.


33.   From at least in or about 2015, up to and including in or about November 2019, in the Southern District of New York and elsewhere, BRADLEY PIERRE, ANDREW PRIME, and ARTHUR BOGORAZ, the defendants, together with others known and unknown, did willfully and knowingly combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, a violation of the Travel Act, in violation of Title 18, United States Code, Section 1952.

34.   It was a part and an object of the conspiracy that BRADLEY PIERRE, ANDREW PRIME, and ARTHUR BOGORAZ, the defendants, and others known and unknown, knowingly did travel in interstate and foreign commerce and did use the mail and a facility in interstate and foreign commerce, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, to wit, a bribery scheme in violation of New York Penal Law §§ 180.05, 200.00, and 200.10 and New Jersey

Revised Statutes § 2C:27-2, among others, whereby employees or agents of hospitals, the NYPD, emergency medical services, and other entities disclosed protected, confidential information of tens of thousands of motor vehicle accident victims in New York, New Jersey, and elsewhere in exchange for payment, and thereafter performed and attempted to perform acts to promote, manage, establish and carry on, and to facilitate the promotion, management, and carrying on of such unlawful activity.

### Overt Acts

35.   In furtherance of said conspiracy and to effect its illegal object, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about August 31, 2017, BRADLEY PIERRE and ANDREW PRIME, the defendants, had the following conversation over an encrypted messaging application:

| Sender | Message |
|--------|---------|
| PRIME | Got her 🔒<br>Start tonight<br>I guess some didn't leave names 💣♂ |
| PIERRE | I sent them out already.<br>It's going to take time to perfect. |
| PRIME | Rp = police car involved<br>Mc/fc<br>Male caller /female caller |
| PIERRE | I know.. |
| PRIME | Ok<br>I feel like it should be more |
| PIERRE | Nah--chill, let me get you the feedback. Jay's shit wasn't a success overnight!!!<br>Tell her to get at least the last or first.. |

| PRIME | She said some ppl don't wanna give it<br>She don't take calls<br>She dispatch<br>But the info is fresh right? |
|-------|---|
| PIERRE | Seems that way. |

b.    On or about August 2, 2019, PIERRE and
BOGORAZ had the following conversation over an encrypted
messaging application about a Runner ("Runner-1"):

| Sender | Message |
|--------|---------|
| PIERRE | I dropped off the intel. Me and Aurthor B have a deal that we worked out. I'll tell you the details when I meet with you<br>He knows<br>10K monthly marketing expense |
| BOGORAZ | That works<br>We just need to figure out a way to make sure he doesn't steal |
| PIERRE | Yo—I ave [sic] him by the balls. I pull this intel. We'll do it ourselves. I also have someone else who's a better business man then [sic] him |

(Title 18, United States Code, Section 371.)

## COUNT FOUR
### (AGGRAVATED IDENTITY THEFT)

The Grand Jury further Charges:

36.    The allegations set forth in paragraphs 1
through 26 of this Indictment are repeated and realleged as if
fully set forth herein.

37.    From at least in or about 2015 up to and
including November 2019, in the Southern District of New York
and elsewhere, BRADLEY PIERRE the defendant, together with

others known and unknown, knowingly did transfer, possess, and
use, without lawful authority, a means of identification of
another person, during and in relation to a felony violation
enumerated in Title 18, United States Code, Section 1028A(c), to
wit, PIERRE, during and in relation to the healthcare fraud
conspiracy charged in Count One, caused Runners to bribe 911
operators, hospital employees, and others for the names and
phone numbers motor vehicle accident victims and use these
unlawfully acquired means of identification to induce victims to
seek medical treatment from the No-Fault Facilities.

(Title 18, United States Code, Section 1028A.)

Forfeiture Allegation as to Count One
(Conspiracy to Commit Healthcare Fraud)

38.  As a result of committing one or more of the
offense charged in Count One of this Indictment, BRADLEY PIERRE,
MARVIN MOY, and WILLIAM WEINER, the defendants, pursuant to
Title 18, United States Code, Section 982(a)(7), shall forfeit
United States currency, in that such a sum represents any and
all property, real and personal, that constitutes or is derived,
directly and indirectly, from gross proceeds traceable to the
commission of the offense charged in Count One.

Forfeiture Allegation As to Count Two
(Conspiracy to Commit Money Laundering)

39.  As a result of committing one or more of the
money laundering offense charged in Count Two of this

18

Indictment, BRADLEY PIERRE, MARVIN MOY, and WILLIAM WEINER, the defendants, pursuant to Title 18, United States Code, Section 982(a)(1), shall forfeit United States currency, in that such a sum represents any and all property, real and personal, involved in the offense charged in Two, and any property traceable to such property.

### Forfeiture Allegation As to Count Three
(Conspiracy to Commit Travel Act Bribery)

40.  As a result of committing the offense alleged in Count Three of this Indictment, BRADLEY PIERRE, ANDREW PRIME, and ARTHUR BOGORAZ, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, constituting or derived from proceeds obtained, directly or indirectly, as a result of said offense; and any and all property, real or personal, that was used or intended to be used to commit or facilitate the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense that the defendant personally obtained.

### Substitute Asset Provision

41.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

19

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the said defendant up to the value of the forfeitable property.

(Title 18, United States Code, Section 982, and
    Title 21, United States Code, Section 853.)


FOREPERSON                          DAMIAN WILLIAMS
                                    United States Attorney

20

Form No. USA-33s-274 (Ed. 9-25-58)

---

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

**UNITED STATES OF AMERICA**

v.

**BRADLEY PIERRE, MARVIN MOY, WILLIAM WEINER, ANDREW PRIME, and ARTHUR BOGORAZ,**

**Defendants.**

---

## SEALED INDICTMENT

22 Cr.

(18 U.S.C. §§ 371, 1349, 1956 and 2)

DAMIAN WILLIAMS
United States Attorney

FOREPERSON