UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

                                 :

UNITED STATES OF AMERICA

                                 :

       -v.-

                                 :        22 Cr. 19 (PGG)

BRADLEY PIERRE, *et al.*,

                                 :

              Defendants.

                                 :

------------------------------------------------------------x

## GOVERNMENT'S COMBINED OPPOSITION TO DEFENDANT WILLIAM WEINER'S MOTION FOR A SEVERANCE AND DEFENDANT ARTHUR BOGORAZ' MOTION FOR AN ADJOURNMENT

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Mathew Andrews
Qais Ghafary
Michael Lockard
Assistant United States Attorneys
    -Of Counsel-

## PRELIMINARY STATEMENT

The Government respectfully files this opposition to defendant William Weiner's motion for a severance (Dkt. 303 (the "Weiner Motion")) and Bogoraz's motion for reconsideration of the Court's denial of his request to adjourn the trial date (Dkt. 312 (the "Motion for Reconsideration")) (collectively, the "Motions"). The Court should deny the Motions as meritless.

## WEINER'S SEVERANCE MOTION SHOULD BE DENIED

### I.   Relevant Law

The Court set forth the relevant law concerning joinder in *United States v. Israilov*. No. 22 CR. 20 (PGG), 2023 WL 4407464, at *10–11 (S.D.N.Y. July 6, 2023). Rule 8(b) of the Federal Rules of Criminal Procedure provides that two or more defendants may be joined in a single indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Joinder of defendants in multiple-count indictments is proper where the charged conduct is "'unified by some substantial identity of facts or participants' or 'arise[s] out of a common plan or scheme.'" *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir. 1989) (quoting *United States v. Porter*, 821 F.2d 968, 972 (4th Cir. 1987)); *accord United States v. Rittweger*, 524 F.3d 171, 178 (2d Cir. 2008). Joinder may be appropriate even where a defendant is not charged in a conspiracy count that names co-defendants. *Id.* (citing *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003)).

The Second Circuit has instructed that joinder is proper when "common factual elements" of different charges are readily apparent. *United States v. Turoff*, 853 F.2d 1037, 1044 (2d Cir. 1988). For example, "counts might be 'connected' if one of the offenses 'depend[s] upon [ ] or necessarily [leads] to the commission of the other,' or if proof of one act 'constitute[s][ ] or depend[s] upon proof of the other.'" *United States v. Shellef*, 507 F.3d 82, 98 (2d Cir. 2007)

(quoting *United States v. Halper*, 590 F.2d 422, 429 (2d Cir. 1978)) (alterations in *Shellef*). Similarly, where one offense stems from the other, that link "provides a sound basis for joinder under Rule 8(b)." *Turoff*, 853 F.2d at 1044. Finally, where two charged conspiracies are "intertwined" with each other, they are sufficiently related to justify joinder. *Attanasio*, 870 F.2d at 815.

Rule 14 of the Federal Rules of Criminal Procedure provides, however, that even where joinder is proper under Rule 8(b), a court may nonetheless grant a severance "if the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government . . . ." Fed. R. Crim. P. 14(a). In order to prevail on a severance motion under Rule 14, a "defendant must show not simply some prejudice but *substantial* prejudice." *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) (quoting *United States v. Werner*, 620 F.2d 920, 928 (2d Cir. 1980)) (emphasis in *Sampson*). A defendant seeking a severance under Rule 14 has an "extremely difficult burden," because he must demonstrate that he would be so prejudiced by joinder that he would be denied a fair trial. *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir.1989) (internal quotation marks and citation omitted).

It is not enough for a defendant to show that he "may have a better chance of acquittal in [a] separate trial[]." *Zafiro v. United States*, 506 U.S. 534, 540 (1993). Instead, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of [a defendant], or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. Even in those rare instances where a defendant establishes a "high" risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

3

The Second Circuit has instructed that "[t]he principles that guide the district court's consideration of a motion for severance usually counsel denial." *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993). "[T]he fact that evidence may be admissible against one defendant but not another does not require a severance," *United States v. Carson*, 702 F.2d 351, 367 (2d Cir. 1983), and a limiting instruction is typically sufficient to cure any potential for spillover prejudice. *See United State v. DeVillio*, 983 F.2d 1185, 1192-93 (2d Cir. 1993) (court's "explicit limiting instruction to the jurors that testimony [concerning an attempted murder by co-defendants] could not be used as evidence against either [defendant pursuing appeal]" was sufficient to protect against potential unfair prejudice arising from joint trial); *United States v. Chang An-Lo*, 851 F.2d 547, 556 (2d Cir. 1988) (holding that despite defendants' claim that the "overwhelming majority of evidence introduced at trial was not admissible against them," the trial judge's limiting instruction was sufficient to ensure that the appealing defendants did not suffer unfair prejudice).

## II.    Application

The Court is well aware of the factual background of the charges in the Second Superseding Indictment, and the Government will not repeat them at length here. The Government has consistently argued that the bribery conspiracy and healthcare fraud conspiracy offenses charged in the indictment are inextricably intertwined. The indictment alleges that Arthur Bogoraz and Bradley Pierre worked together with Anthony Rose to bribe hospital employees, 911 operators, and the like for confidential information about motor vehicle accident victims. Bogoraz, Pierre, and Rose then steered victims to receive treatment at a variety of medical facilities controlled by Pierre, including Nexray (where the healthcare fraud took place). Pierre unlawfully controlled Nexray and worked with William Weiner to falsify injuries in MRI

4

reports so that medical facilities could conduct unnecessary medical treatments and attorneys could file fraudulent lawsuits for damages—all of which benefited Pierre, Bogoraz, Weiner, and others.

As such, the bribery and healthcare fraud schemes "arise out of a common plan or scheme," *Attanasio*, 870 F.2d at 815 (brackets omitted), because "one of the offenses 'depend[s] upon [] or necessarily [leads] to the commission of the other.'" *Shellef*, 507 F.3d at 98 (quoting *Halper*, 590 F.2d at 429 (alterations in *Shellef*)). The healthcare fraud scheme involving Pierre, Weiner, Nexray, and other clinics and doctors was not possible without the steady stream of unsuspecting victims supplied by the bribery scheme. The bribery scheme, in turn, was funded by illegal proceeds generated by the healthcare fraud—namely, through insurance billings for unnecessary medical treatments and insurance settlements from fraudulent lawsuits. This is a more than sufficient basis for joinder.

Likewise, there is no substantial prejudice requiring severance under Rule 14 of the Federal Rules of Criminal Procedure. As the Court has noted, a "defendant seeking a severance under Rule 14 has an 'extremely difficult burden,' because he must demonstrate that he would be so prejudiced by joinder that he would be denied a fair trial." *Israilov*, 2023 WL 4407464, at *10–11 (quoting *Casamento*, 887 F.2d at 1149 (internal quotation marks and citation omitted)). No such prejudice exists here. Even if there were a severance, Weiner's trial would include testimony about the bribery scheme because it is evidence of Bradley Pierre's control of Nexray. Similarly, even though Bogoraz is charged with bribery offenses and not healthcare fraud offenses, his trial would still include testimony about the healthcare fraud scheme because the purpose of Bogoraz and his co-conspirators' scheme was to funnel patients to particular medical facilities under Pierre's non-physician control. Furthermore, to the extent that some evidence

5

presented at trial may be admissible against Weiner or Bogoraz but not the other, the "fact that evidence may be admissible against one defendant but not another does not require a severance," *Carson*, 702 F.2d at 367, and a limiting instruction is sufficient to cure any potential for spillover prejudice, *see DeVillio*, 983 F.2d at 1192-93.

## BOGORAZ'S RENEWED REQUEST FOR AN ADJOURNMENT SHOULD BE DENIED

### I.    Relevant Law

A motion for reconsideration:

> is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.  The standard for granting a motion for reconsideration is strict.  A motion will be granted only where the movant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.

*United States v. Blondett*, 16 Cr. 387 (JMF), 2022 WL 549707, at *1 (S.D.N.Y. Feb. 23, 2022) (cleaned up). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transport Corp.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012).

### II.    Application

Bogoraz's Motion for Reconsideration asserts a laundry list of complaints. The Government will be brief given that the Court has already addressed most of these complaints during the parties' prior conference. (*See* Dec. 12, 2023 Tr. at 2-14).

First, Bogoraz argues that, even though he was informed over a year ago that the Government would add a money laundering count if he proceeded to trial, "during the majority of the case, [he was] prejudiced from not knowing the sufficiently particularized nature of the

money laundering charge that he would eventually be charged with, until the conference on December 12." (Motion for Reconsideration at 9). This is meritless. The Government has always told Bogoraz's counsel that the money laundering charge arises from the fact that Bogoraz concealed payments to Rose of illegal bribe proceeds.  (*See* Dec. 12, 2023 Tr. at 11-12). Rule 16 materials relevant to the money-laundering charge were produced in connection with the underlying indictments, and the added charge will not affect the Government's proof at trial.

Second, counsel's claim that the Government has failed to produce bank records for shell companies used by Anthony Rose is wrong. The Government produced bank records for the entities at issue on November 16, 2023. The Government thereafter notified Bogoraz that some of the check images were missing, and the Government was working on procuring these images from the banks.[1] The Government subsequently produced complete financial schedules for these entities on December 17, 2023, which contain every transaction from account inception to the time of the Government's grand jury subpoena for each entity. These financial schedules literally set forth the "who, what, where, and when" of every transaction—addressing all of Bogoraz's complaints. Moreover, Bogoraz has failed to inform the Court that he *already has* copies of every single check that *he* wrote as part of the money laundering scheme—and has had so for years—because he wrote the checks using bank accounts under his control. Bogoraz cannot now complain about lacking materials that have been under his control from before this prosecution was even initiated.

Third, Bogoraz seeks an "adjournment to permit his defense to investigate potentially critical areas of impeachment of the central cooperator." (Motion for Reconsideration at 14).

---

[1] The Government has procured the missing check images and produced them today, December 28, 2023.

This is meritless. The Speedy Trial Act cannot be used as both a sword and a shield. *United States v. Tchack*, 296 F. Supp. 500, 502 (S.D.N.Y. 1969). Bogoraz made a strategic decision to assert his right to a speedy trial knowing that this would limit the amount of time that he would have to prepare and investigate. To the extent that this trial date is now inconvenient, this is a product of Bogoraz's own defense strategy. The Speedy Trial Act is not a tool for a defendant to invoke and set aside at his leisure.

Likewise, Bogoraz's request for an adjournment based on a claim of new "impeachment" material of a cooperating witness is baseless. The prosecution team has no information supporting Bogoraz's claims. The Government has no obligation to conduct additional investigation of Bogoraz's claims or to turn over records that the prosecution team does not possess; the fact that one detective in the NYPD assisted the Government's prosecution of Anthony Rose in 2019 does not turn the entirety of the NYPD into the Government's prosecution team. *See, e.g.*, *United States v. Quinn*, 445 F.2d 940, 944 (2d Cir. 1971) (refusing to impute knowledge from one AUSA to another AUSA merely because both worked for the Department of Justice); *see also United States v. Locascio*, 6 F.3d 924, 948-949 (2d Cir. 1993) (refusing to consider FBI agents uninvolved in the investigation of the defendants to be members of the prosecution team).

Bogoraz similarly has failed to set forth anything more than conjecture built upon hearsay with regard to this "impeachment" material. Bogoraz provides no details of an alleged conversation between his personal investigator and an NYPD detective other than that someone at the NYPD considers a cooperating witness a "person of interest." This vague claim provides little basis for Bogoraz's contentions. Likewise, Bogoraz's unsourced claim about an alleged payment in 2019 consists of nothing more than a conversation between his private investigator

and an unknown individual alleging that a cooperating witness' mother accepted money from unidentified individuals. To the extent the prosecution team comes into possession of additional impeachment materials relating to these assertions, that information will be disclosed in a timely manner; but the Government has no further information concerning these claims. Bogoraz is free to cross-examine the cooperating witness about these alleged occurrences. However, speculation, conjecture, and hearsay are not a valid basis for an adjournment of a trial date that Bogoraz himself has repeatedly demanded.

Lastly, Bogoraz has yet to respond to the Government's motions in limine (Dkt. 289) even though his submission was due nearly a week ago on December 22, 2023. The Government respectfully requests that the Court order Bogoraz to file a submission or consider his reply forfeited by January 4, 2024.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the Motions.

Dated:  New York, New York
       December 28, 2023

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York


By: _____/s/_____
    Mathew Andrews
    Qais Ghafary
    Michael Lockard
    Assistant United States Attorneys
    Southern District of New York