

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 6, 2024

**VIA ECF**
The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. William Weiner,*
                  22 Cr. 19 (PGG)

Dear Judge Gardephe:

      The Government writes in opposition to defendant William Weiner's motion to quash the Government's trial subpoena for records from Nexray Medical Imaging. (Dkt. 337 (the "Motion")). The Motion raises two objections:

> First, the Subpoena seeks documents from time periods that predate the charged conspiracy. Second, even though the Government has already obtained thousands upon thousands of text messages, the Subpoena seeks all text messages between all Nexray phones and eight individuals dating back to 2013.

(Motion at 2). Neither of these objections has merit. Each of the Government's requests are narrowly tailored for specific, articulable, relevant, and admissible records. The Government walks through each request below.[1]

1. **Copies of any reports (MRI, X-Ray, or CT) prepared by Dr. Barbara Moriarty, Dr. Mark Decker, or Dr. Mark Novick that were addended or modified in any way by Dr. William Weiner.**

      Neither of Weiner's objections are applicable to this request because the requested reports are all within the timeframe of the charged healthcare fraud conspiracy. In any event, the materials are also relevant and admissible. A central piece of evidence at this trial will be the fact that Weiner secretly addended the report of Dr. Barbara Moriarty to falsely add injuries. The Government has requested these reports for the first time in 2021 when it served a grand jury

---

[1] The Motion also states, in a wholly conclusory manner, that "the Subpoena requests documents that are overbroad, irrelevant, or are fishing expeditions. Compliance with the Subpoena would be burdensome and time consuming, particularly given counsel's limited availability due to trial preparations." (Motion at 2). The Government cannot respond to conclusory statements that do not explain counsel's rationale or reasoning.

subpoena on Nexray seeking the materials. Nexray failed to produce the addended reports, in contravention of the grand jury subpoena, and the Government is therefore once again requesting them via trial subpoena.

2. **Documentation of patient referrals from Epionne Medical and Modern Brooklyn Medical to Nexray Medical Imaging, d/b/a Soul Radiology between 2011 and 2014, inclusive.**

As the Court is aware, the Government will prove at trial that Weiner falsified injuries in MRI reports to boost referrals by enabling referring clinics to bill insurance companies for unnecessary treatments. These clinics included, among others, Rutland Medical, Epionne Medical, and Modern Brooklyn Medical. Each of these facilities were brought into the scheme by Bradley Pierre.

The requested materials will show that Weiner lied about Bradley Pierre's role in bringing Epionne Medical and Modern Brooklyn Medical into the scheme. During Weiner's Examination under Oath in May 2017 before Farmers Insurance Company, Weiner was asked, "So would it be fair to say that the only patients that come through the door as of now would be patients from Dr. Moy's facility?" Weiner responded:

> Well, Rebecca called two other offices that I had previously gotten patients from when I was on Woodhaven, so I get some patients from them. One is called Epionne, they're in Brooklyn . . . . And then Modern Medical, which is also in Brooklyn.

Weiner operated on "Woodhaven" between 2011 and 2014. However, the Government's evidence at trial will show that Weiner never received patients from these facilities while Weiner was operating at this location. Instead, text messages and witness testimony will show that Bradley Pierre recruited these two facilities. The Government's subpoena seeks documentation from Nexray of patient referrals from Epionne Medical and Modern Brooklyn Medical to Nexray between 2011 and 2014 because no such documentation exists. The absence of such records is evidence that Weiner lied to conceal Bradley Pierre's participation in the healthcare fraud scheme.

3. **Copies of Examinations under Oath ("EUOs") of Dr. William Weiner between January 1, 2014 and January 1, 2022, other than the EUOs of Dr. Weiner by Farmers Insurance in 2017 and Liberty Mutual in 2021.**

Weiner objects to this request insofar that it includes Examinations under Oath between January 1, 2014 and January 1, 2015. The Court is aware that "it is within the court's discretion to admit evidence of prior acts to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed." *United States v. Rosa,* 11 F.3d 315, 334 (2d Cir. 1993). Weiner's statements in Examinations under Oath between January 1, 2014 and January 1, 2015 are relevant to the formation of his conspiracy with Bradley Pierre including, among other things, how Weiner met Bradley Pierre, why Weiner went into business with Bradley Pierre, and the purported services that Bradley

Pierre was to provide. Moreover, to the extent that Weiner lied about Bradley Pierre in these Examinations under Oath, this is highly relevant evidence of Weiner's consciousness of guilt.

4. **Documentation showing the total amount of money billed to insurance companies for claims "financed" by Medical Reimbursement Consultants between January 1, 2016 and January 1, 2020.**

Neither of Weiner's objections are applicable to this request because the requested documents are all within the timeframe of the charged healthcare fraud conspiracy. In any event, the materials are also relevant and admissible. The Government will show at trial that the so-called "financing" agreement between Weiner and Pierre is fictious because actual payments by Weiner to Pierre far exceeded what was permitted in the contract. For instance, the Government will introduce evidence that the so-called "financing" agreement is non-recourse; Pierre was not supposed to be paid if an insurance company denied Nexray's bill. The documents requested in Requests #4 and #5 will show that Weiner was still paying Pierre even though insurance companies were denying nearly 50% of Nexray's bills—in violation of the so-called "financing" agreement.

5. **Documentation showing the total amount of money paid by insurance companies for claims "financed" by Medical Reimbursement Consultants between January 1, 2016 and January 1, 2020.**

Neither of Weiner's objections are applicable to this request because the requested documents are all within the timeframe of the charged healthcare fraud conspiracy. The relevance and admissibility of these materials are set forth above.

6. **Copies of phone records (incoming and outgoing calls) for February 27, 2019 for all phones subscribed in the name of Nexray Medical Imaging, d/b/a Soul Radiology.**

Neither of Weiner's objections are applicable to this request because the requested documents are all within the timeframe of the charged healthcare fraud conspiracy. In any event, the materials are also relevant and admissible. The materials will show that Weiner did not contact anyone besides Pierre before secretly addending Dr. Moriarty's report to falsely add injuries.

7. **Copies of text messages for all phones subscribed in the name of Nexray Medical Imaging, d/b/a Soul Radiology with the following individuals between January 1, 2013 and the present:**
    a. **Bradley Pierre**
    b. **Albert Haft**
    c. **Barbara Moriarty**
    d. **Mark Decker**
    e. **Mark Novick**
    f. **Alexander Mostovoy**
    g. **Marvin Moy**
    h. **Gulchehra Zulonov**

Weiner first objects that "the Government has already obtained text messages between Dr. Weiner and the listed custodians from Bradley Pierre, Barbara Moriarty, and Marvin Moy's devices, and through its subpoena to Apple, Inc. for records from Dr. Weiner's iCloud data." (Motion at 3). This is factually incorrect. The Government has an incomplete set of text messages between Weiner and Bradley Pierre from approximately December 2016 to May 2020 that were recovered from Bradley Pierre's iCloud account. The Government has no direct messages between Weiner and Dr. Moriarty[2] or between Weiner and Moy. The Government recovered no text messages from Weiner's "iCloud data" because Weiner did not have messages saved to his iCloud. Weiner's representation about his "iCloud data" is wrong.

The Government's subpoena further properly seeks messages from January 1, 2013 to January 1, 2015 among Weiner, Pierre, Haft, Moy, and Zulonov because these records are relevant and admissible to show the formation of the healthcare fraud conspiracy. The Government's evidence at trial will show that these individuals were coconspirators who helped Weiner set up Nexray as part of the scheme.[3] The Government is not seeking text messages among Weiner, Moriarty, Novick, Decker, and Mostovoy from January 1, 2013 to January 1, 2015 because these individuals did not meet until after January 1, 2015.

8. **Copies of bills, invoices, receipts, or correspondence documenting services provided to Nexray Medical Imaging, d/b/a Soul Radiology by Inwood Country Club between fiscal years 2015 and 2019, inclusive.**

Neither of Weiner's objections are applicable to this request because the requested documents are all within the timeframe of the charged healthcare fraud conspiracy. In any event, the materials are also relevant and admissible. The Government anticipates that Nexray will produce nothing because Inwood Country Club—Weiner's personal country club—is a personal expense that was improperly recorded on Nexray's tax returns as a business expense.

9. **Documentation of any shareholder loans from Nexray Medical Imaging, d/b/a Soul Radiology to William Weiner between fiscal years 2016 and 2019, inclusive.**

Neither of Weiner's objections are applicable to this request because the requested documents are all within the timeframe of the charged healthcare fraud conspiracy. In any event, the materials are also relevant and admissible. The tax returns for Nexray state that Weiner received shareholder loans but there is no documentation that such loans were actually made or repaid.

---

[2] The Government was able to recover 22 text messages from a group conversation among Weiner, Dr. Moriarty, and individual saved as "Steve."

[3] Zulonov worked for Pierre. As part of the scheme, she filed materially false bills from Rutland to insurance companies. Pierre also directed Zulonov to withhold reimbursement checks mailed from insurance companies to Nexray to make it appear that Nexray had cashflow problems. This, in turn, made the fake loan agreement between Pierre and Weiner look legitimate.

**10. Documentation of repayment of any shareholder loans made to William Weiner by Nexray Medical Imaging, d/b/a Soul Radiology between fiscal years 2016 and 2019, inclusive.**

Neither of Weiner's objections are applicable to this request because the requested documents are all within the timeframe of the charged healthcare fraud conspiracy. The materials are also relevant and admissible for the reasons set forth above for Request #9.

For the foregoing reasons, Weiner's motion to quash should be denied.

                                        Respectfully submitted,
                                        DAMIAN WILLIAMS
                                        United States Attorney

By:          /s/
                MATHEW ANDREWS
                MICHAEL LOCKARD
                QAIS GHAFARY
                Assistant United States Attorney
                Tel.    (212) 637-6526