UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

WILLIAM WEINER and
ARTHUR BOGORAZ,

Defendants.

S3 22 Cr. 19 (PGG)

**GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE PROPOSED EXPERT OPINION TESTIMONY**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Mathew Andrews
Qais Ghafary
Michael Lockard
Assistant United States Attorneys
*-Of Counsel-*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .....1

BACKGROUND .....1

I. The Charged Offenses .....1

II. Weiner's Expert Disclosure .....2

III. Weiner's Unexplained Failure to Comply with a Grand Jury Subpoena .....4

DISCUSSION .....4

I. Relevant Law .....4

II. Application .....7

A. Weiner's Expert Disclosure Fails To Describe the Principles and Methods Used By Mr. Bishop or How Those Principles and Methods Were Applied .....7

B. Mr. Bishop's Proffered Opinions Are Not Relevant to Matters Before the Jury .....11

C. Mr. Bishop's Opinions Impermissibly Attempt to Establish Weiner's State of Mind or Offer Legal Opinion .....12

CONCLUSION .....14

## TABLE OF AUTHORITIES

### Cases

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir. 2002) ............................ 5, 7, 8
*Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705 (2d Cir. 1989) ..................................... 12
*Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 09 Civ. 3020 (SAS), 2011 WL 6288415 (S.D.N.Y. Dec. 15, 2011) ........................................................................ 6, 13
*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) .......................................... 5
*Haas v. Henkel*, 216 U.S. 462 (1910) ......................................................................................... 12
*Hygh v. Jacobs*, 961 F.2d 359 (2d. Cir. 1992) ........................................................................ 5, 6
*In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61 (S.D.N.Y. 2001) ................................. 6
*In re Pfizer Inc. Secs. Litig.*, 819 F.3d 642 (2d Cir. 2016) ............................................................ 4
*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) ................................ 6, 13
*Linde v. Arab Bank, PLC*, 920 F. Supp. 2d 282 (E.D.N.Y. 2011) .................................................. 7
*LVL Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612 (S.D.N.Y. 2016) ............ 5
*Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290 (2d Cir. 2008) .................. 5, 8
*Marx Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505 (2d. Cir. 1977). ............................................. 6
*Sec. & Exch. Comm'n v. Am. Growth Funding II, LLC*, 16 Civ. 828 (KMW), 2019 WL 1772509, (S.D.N.Y. Apr. 23, 2019) ............................................................................................... 6, 13
*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 81 B.R. 370 (Bankr. S.D.N.Y. 2017) ........................................................................................................................ 7
*United States v. Atilla*, 966 F.3d 118 (2d Cir. 2020) .................................................................. 12
*United States* v. *Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) ............................................................ 5
*United States v. Coplan*, 703 F.3d 46 (2d Cir. 2012) .................................................................. 12
*United States* v. *Ingredient Tech. Corp.*, 698 F.2d 88 (2d Cir. 1983) .......................................... 6
*United States v. Klein*, 247 F.2d 908 (2d Cir. 1957) ................................................................... 11
*United States v. Romano*, 938 F.2d 1569 (2d Cir. 1991) ............................................................ 11
*United States* v. *Scop*, 846 F.2d 135 (2d Cir. 1988) ...................................................................... 6

### Other Authorities

Internal Revenue Service, *Office of Professional Responsibility and Circular 230, Rev. June 2014, available at* https://www.irs.gov/tax-professionals/office-of-professional-responsibility-and-circular-230 ............................................................................................................ 14

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in support of its motion to exclude proposed expert opinion testimony by the defendant William Weiner. Weiner proposes to call former Internal Revenue Service ("IRS") agent Thomas Bishop to offer opinions about the financial records and tax filings of Nexray Medical Imaging, P.C. ("Nexray"), the radiology practice Weiner used in furtherance of the charged healthcare fraud conspiracy. As discussed below, Weiner's proposed expert testimony should be excluded because (i) Weiner's expert disclosure contains no explanation or description whatsoever of the methodologies Mr. Bishop used to reach his conclusions; (ii) several of the proffered opinions are not relevant to matters the jury must decide; and (iii) several of the proffered opinions impermissibly attempt to establish Weiner's state of mind or include legal opinion.

## BACKGROUND

### I. The Charged Offenses

Weiner is charged in the Third Superseding Indictment (Dkt. Entry No. 282) (the "Indictment") in four counts with conspiring to commit healthcare fraud in violation of 18 U.S.C. § 1349 (Count One), healthcare fraud in violation of 18 U.S.C. § 1347 (Count Two), conspiring to launder the proceeds of healthcare fraud in violation of 18 U.S.C. § 1956 (Count Three), and conspiring to obstruct and impede the lawful functions of the IRS in violation of 18 U.S.C. § 371 (Count Seven).

As described in the underlying second superseding indictment (Dkt. Entry No. 191), Weiner conspired with Bradley Pierre and others to defraud no-fault vehicle insurance providers by, among other things, funneling automobile accident victims to medical clinics, including an MRI imaging facility called Nexray where Weiner practiced, which were in fact controlled by Pierre, a non-physician, in violation of New York state law. Dkt. Entry No. 191 ¶¶ 10(b), 14-15,

19. Pierre exercised actual ownership and control over Nexray by, among other things, receiving the majority of Nexray's proceeds, controlling Nexray's bank accounts, influencing the hiring and firing of Nexray employees, identifying locations for Nexray's facilities, negotiating rent for Nexray's leases, and choosing the attorneys who would represent Nexray and Weiner in depositions. *Id.* ¶ 19. Weiner further conspired to provide falsified MRI reports for patients referred by Pierre's network, *id.* ¶ 20; and to lie in Examinations Under Oath ("EUOs") in disputes with no-fault insurers. *Id.* ¶ 21.

Weiner also participated in a conspiracy to obstruct and impede the lawful functions of the IRS filing tax returns with false representations. Ind. ¶¶ 12-14. Weiner conspired to file Nexray tax returns that, among other things, claimed Nexray's payments of Weiner's personal expenses as deductible business expenses, including country club fees, car payments, and personal credit card expenses; and claiming inflated and fictious "management fees" paid to Bradley Pierre's companies as deductible business expenses. Dkt. Entry No. 191 ¶ 28(f) & (g).

## II. Weiner's Expert Disclosure

Late afternoon on January 5, 2024, Weiner provided the Government with an expert disclosure pursuant to Rule 16(b)(C), dated January 4, 2024, for Thomas Bishop, a former Special Agent with the IRS's Criminal Investigation division. *See* Ex. A (expert disclosure), Ex. B (qualifications).

The disclosure stated that Mr. Bishop had conducted a "forensic examination" of "the books and records" of Nexray, including "Nexray's General Ledger, Trial Balances, financial reports, ledgers, accounting records (including work papers), tax returns, QuickBooks files, and bank account records (including bank statements, check stubs, and copies of checks) (collectively, the 'Financial Records')." No forensic examination materials, analysis, or reports were provided.

The disclosure went on to state that Mr. Bishop would offer the following opinions, based on "his experience expertise [sic] and forensic examination of the Financial Records":

- the Government's allegations as to the amount by which Nexray allegedly overstated "management fees" are inaccurate and material to the overall calculations (Ex. A ¶ 3(a));

- the Government's allegations regarding the amounts that Nexray allegedly deducted as improper personal expenses are inaccurate and material to the overall calculations (*id.* ¶ 3(b));

- Nexray's tax returns and accounting records reflect numerous errors (including, but not limited to, classification errors) and inconsistencies (*id.* ¶ 3(c));

- many of these errors and inconsistencies caused William and Lois Weiner to pay more in income taxes than they would have paid had the errors not occurred (*id.* ¶ 3(d));

- the Financial Records include documents with accurate and detailed information regarding corporate and personal expenditures (*id.* ¶ 3(e));

- the Financial Records are sufficiently clear, detailed, and accurate such that a reasonably competent tax preparer could have prepared accurate tax returns (*id.* ¶ 3(f));

- tax payers commonly rely on their tax preparers to ensure that their tax returns are accurate and correct (*id.* ¶ 3(g));

- the tax preparer (Albert Haft) provided corrupt and unprofessional services to Nexray and the Weiners (*id.* ¶ 3(h));

- the tax preparer (Albert Haft) failed to provide services to Nexray and the Weiners in compliance with the laws applicable to tax preparers, including IRS Circular 230 (*id.* ¶ 3(i));

- the Financial Records contain numerous General Ledger entries that are inaccurate, inappropriate, and/or inconsistent (*id.* ¶ 3(j));

- many of these General Ledger entries would lead a user to believe that Medical Reimbursement Consultants, Inc. (MRC) advanced far more money to Nexray than it actually did (*id.* ¶ 3(k)); and

- the Financial Records are consistent with the conclusions that: (1) Nexray and the Weiners are victims of a financial fraud perpetrated by MRC; and (2) the tax preparer (Albert Haft) assisted MRC in committing that fraud. (*Id.* ¶ 3(l)).

The disclosure sets forth no further details of Mr. Bishop's proposed opinions or explanation of any of the calculations, principals, or methodologies Mr. Bishop applied to reach his opinions.

**III. Weiner's Unexplained Failure to Comply with a Grand Jury Subpoena**

On March 15, 2021, the Government served a subpoena on Nexray for "[a]ll corporate bookkeeping records and other financial records" and "[a]ny and all record related to the [payees of Nexray], including but not limited to (a) accounting ledgers, by party, (b) invoices, bills, receipts, [and] (c) copies of checks, wire detail, and/or cash receipts . . . ." *See* Ex. C (March 2021 subpoena). Almost three years later, on December 19, 2023 and less than a month before trial, Weiner produced nearly 400 pages of inculpatory financial records that were directly responsive to the March 2021 subpoena, including handwritten accounting ledgers and hundreds of receipts for Weiner's personal expenses that were nonetheless paid by Nexray. The production letter from Nexray contains no explanation for the extraordinary delay. *See* Ex. D (production cover letter).

**DISCUSSION**

**I. Relevant Law**

Federal Rule of Evidence 702 provides that expert testimony that "assists the trier of fact to understand the evidence or to determine a fact in issue," may be admitted if "the testimony is based on sufficient facts or data," and "is the product of reliable principles and methods" that have been reliably applied "to the facts of the case."

The party proffering the expert's opinions "has the burden to establish the [Rule 702] admissibility requirements, with the district court acting as a 'gatekeeper' to ensure that the expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *In re Pfizer Inc. Secs. Litig.*, 819 F.3d 642, 658 (2d Cir. 2016) (cleaned up). In particular, as the Second Circuit has noted, "[u]nder Rules 701 and 702 [of the Federal Rules of Evidence],

opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence that wastes time." *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d. Cir. 1992). (internal quotation omitted).

In fulfilling this gatekeeping role, the Court should first determine whether the proffered expert testimony is relevant: whether it "has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Next, the court must determine "whether the proffered testimony has a sufficiently 'reliable foundation' to permit it to be considered." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). In this inquiry, the district court should consider the indicia of reliability identified in Rule 702, namely, "(1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (cleaned up). Expert testimony should be excluded if it is "speculative or conjectural" or is "conclusory." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008). The testimony must also "fit" the facts of the case at issue. *See, e.g.*, *LVL Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 641-42 (S.D.N.Y. 2016) (Noting that "the testimony must be both reliable *and* relevant in that it 'fits' the facts of the case" and finding proposed expert testimony "fails the *Daubert* 'fit' requirement.") (emphasis in original).

It is "the exclusive province" of the trial judge "to instruct the jury on the law." *Hygh*, 961 F.2d at 363-64. Accordingly, "an expert's testimony on issues of law is inadmissable." *United States* v. *Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). Indeed, "[t]he rule prohibiting experts from providing their legal opinions or conclusions is 'so well-established that it is often

deemed a basic premise or assumption of evidence law—a kind of axiomatic principle.'" *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (internal quotation marks omitted). Because it is the Court's role to instruct the jury on the requirements of the law, the Second Circuit has cautioned that "it would be very confusing to a jury to have opposing opinions of law admitted into evidence as involving a factual question for them to decide." *United States* v. *Ingredient Tech. Corp*., 698 F.2d 88, 97 (2d Cir. 1983).

In this regard, the Second Circuit "is in accord with other circuits in requiring the exclusion of expert testimony that expresses a legal conclusion," or "communicat[es] a legal standard -- explicit or implicit -- to the jury," since it is "the exclusive province" of the trial judge "to instruct the jury on the law." *Hygh,* 961 F.2d at 363-64 ("experience [of an expert] is hardly a qualification for construing a document for its legal effect"); *see United States* v. *Scop*, 846 F.2d 135, 140 (2d Cir. 1988); *Ingredient Tech. Corp*., 698 F.2d at 97 ("Questions of law are for the Court."). The Circuit has also warned of "[t]he danger . . . that the jury may think that the 'expert' in the particular branch of the law knows more than the judge -- surely an inadmissible inference in our system of law." *Hygh*, 961 F.2d at 364 (quoting *Marx Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 512 (2d. Cir. 1977)).

In addition, "[i]nferences about the intent or motive of parties or others lie outside the bounds of expert testimony." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004); *see also Sec. & Exch. Comm'n v. Am. Growth Funding II, LLC*, 16 Civ. 828 (KMW), 2019 WL 1772509, at *1 (S.D.N.Y. Apr. 23, 2019) ("Opinions concerning state of mind are an inappropriate topic for expert opinion.") (quoting *Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 09 Civ. 3020 (SAS), 2011 WL 6288415, at *8 (S.D.N.Y. Dec. 15, 2011)); *Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 81 B.R. 370, 380 (Bankr.

S.D.N.Y. 2017) (collecting cases); *Linde v. Arab Bank, PLC*, 920 F. Supp. 2d 282, 285 (E.D.N.Y. 2011) ("[O]pinions as to the state of mind, intent, or motive of a government, a charitable entity, or a person . . . do not contain relevant expert evidence.").

## II. Application

Mr. Bishop's proposed opinion testimony should be excluded. First, Weiner provides no explanation of the "principles and methods" that Mr. Bishop used to reach and of his opinions or how he "applied those principles and methods . . . to the facts of the case." *Amorgianos*, 303 F.3d at 265. Second, several of the opinions are vague, confusing, and internally inconsistent, and would not be helpful to the jury under Rule 702 and would be unduly prejudicial under Rule 403. Third, several of Mr. Bishop's proposed opinions, even if they were supported by reliable principles and methods, are irrelevant to the matters the jury will be called upon to decide, and are inadmissible under Rules 401 and 702. Finally, some of the proffered opinions impermissibly attempt to establish Weiner's state of mind or constitute legal opinion.

### A. Weiner's Expert Disclosure Fails To Describe the Principles and Methods Used By Mr. Bishop or How Those Principles and Methods Were Applied

The disclosure for Mr. Bishop proposes a total of 12 expert opinions, ranging from calculations of the amounts of Nexray expenditures improperly deducted as business expenses (Ex. A ¶ 3(a) & (b)), to the identification of errors in Nexray tax returns and accounting records (*id.* ¶ 3(c) & (d)), to opinions about the accuracy or inaccuracy of Nexray's financial records (*id.* ¶ 3(e), (f), (j)), to conclusions that Mr. Bishop draws about the actions and intentions of Weiner and his coconspirators from Nexray's financial records (*id.* ¶ 3(h), (i), (k), (l)).

Despite asserting that Mr. Bishop "performed a forensic examination" of Nexray's financial records, the disclosure provides absolutely no information about how Mr. Bishop reached his opinions, what principles and methodologies he applied, what particular financial information

he applied those principles and methodologies to, and how he applied those principles and methodologies to that financial information. *Amorgianos*, 303 F.3d at 265. In short, Weiner offers no basis whatsoever to admit Mr. Bishop's proposed opinion testimony under Rule 702; it is merely "conclusory," *Major League Baseball Props.,* 542 F.3d at 311, and must be excluded. In the alternative, Weiner should be compelled to provide a sufficient disclosure of Mr. Bishop's methodologies and specific opinions as soon as possible. Given that trial begins next week, the ample time that Weiner has had to provide a sufficient expert disclosure, and Mr. Bishop's representation that he performed a forensic examination of Nexray's financial records, such a supplemental disclosure should be provided by no later than one week before the start of trial.

For example, Mr. Bishop's proposes to opine that "the Financial Records include documents with accurate and detailed information regarding corporate and personal expenditures" (Ex. A ¶ 3(e)) and "the Financial Records are sufficiently clear, detailed, and accurate such that a reasonably competent tax preparer could have prepared accurate tax returns" (*id.* ¶ 3(f)), without explaining what Financial Records he is referring to or what methodology he applied to conclude that a tax preparer could have prepared accurate tax returns. Mr. Bishop also proposes to opine that "Nexray's tax returns and accounting records reflect numerous errors (including, but not limited to, classification errors) and inconsistencies" (*id.* ¶ 3(c)) and that "the Financial Records contain numerous General Ledger entries that are inaccurate, inappropriate, and/or inconsistent." (*Id.* ¶ 3(j)).[1] Mr. Bishop provides no detail at all about what which records he believes are accurate

[1] The apparent inconsistency between Mr. Bishop's opinions that Nexray's financial records contain accurate information and that they contain numerous errors and inaccuracies highlights the problems that result from the vague and conclusory nature of the opinions and Weiner's failure to disclose the methodologies that underlie them.

and which records be believes are inaccurate. These proposed opinions are so vague as to be entirely unhelpful and unilluminating, and should be excluded.

Mr. Bishop proposes to opine that "the Government's allegations as to the amount by which Nexray allegedly overstated 'management fees' are inaccurate and material to the overall calculations" (*id.* ¶ 3(a)), and that "the Government's allegations regarding the amounts that Nexray allegedly deducted as improper personal expenses are inaccurate and material to the overall calculations" (*id.* ¶ 3(b)), but the disclosure does not say (a) why Mr. Bishop disagrees with the figures set forth in the Indictment, (b) what figures Mr. Bishop believes are accurate, (c) how he reached that calculation, or (d) what he means by "material."

Mr. Bishop further proposes to opine that "the tax preparer (Albert Haft) provided corrupt and unprofessional services to Nexray and the Weiners" (*id.* ¶ 3(h)), and that "the tax preparer (Albert Haft) failed to provide services to Nexray and the Weiners in compliance with the laws applicable to tax preparers, including IRS Circular 230." (*Id.* ¶ 3(i)).[2] As described more fully below, these opinions are impermissible and excludable on other grounds, including because Mr. Bishop impermissibly proposes to opine about parties' intentions and legal conclusions, and because the nature of Mr. Bishop's opinions are irrelevant to the jury's determination. Moreover, the disclosure provides no content to Mr. Bishop's conclusion about how Haft acted corruptly or inappropriately, what standards of conduct or practice he violated, how he violated them, or how those violations are relevant to Weiner's guilt or innocence of the charged offenses.

[2] As a factual matter, the Government expects that Haft will testify that he committed crimes in connection with the preparation and filing of tax returns for Nexray and Weiner, specifically, that he agreed with Weiner and others to file false tax returns that fraudulently reduced the amount of taxable income reported for Weiner. However, Mr. Bishop's proffered opinions about Mr. Haft's services are, as described herein, irrelevant and impermissible.

Mr. Bishop also proposes to opine that "many of [Nexray's] General Ledger entries would lead a user to believe that Medical Reimbursement Consultants, Inc. (MRC) advanced far more money to Nexray than it actually did" (*id.* ¶ 3(k)); and that "the Financial Records are consistent with the conclusions that: (1) Nexray and the Weiners are victims of a financial fraud perpetrated by MRC; and (2) the tax preparer (Albert Haft) assisted MRC in committing that fraud." (*Id.* ¶ 3(l)). Again, Mr. Bishop's proposed opinions are devoid of substantive content identifying the general ledger entries to which Mr. Bishop is referring, the information to which Mr. Bishop compared those entries in order to concludes the entries are misleading, or what Mr. Bishop believes is the actual among of money that MRC transferred to Nexray. Nor does the disclosure reveal what Mr. Bishop means by the broad term "financial fraud;" what fraudulent misrepresentations Mr. Bishop believes were made to Nexray as part of that fraud, who made those misrepresentations, how Weiner relied on any such misrepresentations, or how the purported financial fraud is revealed in any of Nexray's financial records.

Mr. Bishop's opinions based vaguely on Nexray's financial records are even more problematic given the generalized description of the records upon which he relied, and the fact that Weiner inexplicably produced nearly 400 pages of Nexray financial records less than three weeks ago. These records were directly responsive to subpoenas served on Nexray more than two and a half years ago, on March 15, 2021; but were only produced by the defendant on December 19, 2023, with no explanation for the extraordinary delay. *See* Ex. D (production cover letter). Not only is it unclear precisely what documents Mr. Bishop reviewed or which of those records are relevant to which of his opinions, but it is also unclear whether Weiner and Nexray have complied with their obligations to provide the relevant records to the Government.

In sum, Mr. Bishop's proposed opinions are so vague, conclusory, and often self-contradictory, that they fail to meet the Rule 702 threshold. They would be entirely unhelpful and, indeed, confusing to the jury and, accordingly, should also be excluded under Rule 403.

### B. Mr. Bishop's Proffered Opinions Are Not Relevant to Matters Before the Jury

Several of Mr. Bishop's proposed opinions are not relevant to matters that the jury will be required to decide, and accordingly should be excluded under Rules 401 and 403. As previously noted, Mr. Bishop proposes to opine that "the Government's allegations as to the amount by which Nexray allegedly overstated 'management fees' are inaccurate and material to the overall calculations" and "the Government's allegations regarding the amounts that Nexray allegedly deducted as improper personal expenses are inaccurate and material to the overall calculations." (Ex. A ¶ 3(a) & (b)). Putting aside that Mr. Bishop provides no explanation of how the numbers are inaccurate, how he reached this conclusion, or what it means for there to be a "material" inaccuracy, Mr. Bishop's opinion about the precise amounts of overstated management fees and personal expenses is not legally relevant.

The Government does not intend to offer a particular dollar figure for the total overstated management fees or the total improperly deducted personal expenses at trial. Weiner is not charged with tax evasion under 26 U.S.C. § 7201, which would require a showing of a tax loss to the IRS. *See United States v. Romano*, 938 F.2d 1569, 1571 (2d Cir. 1991). Weiner is instead charged under 18 U.S.C. § 371 with conspiring to defraud the United States by impeding, obstructing, and impairing the lawful functions of the IRS, often called a *Klein* conspiracy. *See United States v. Klein*, 247 F.2d 908, 915 (2d Cir. 1957). That charge does not require the Government to prove a tax loss. "The defraud clause [of § 371] not only reaches schemes which deprive the government of money or property, but also embraces any conspiracy for the purpose of impairing, obstructing,

or defeating the lawful function of any department of Government." *United States v. Atilla*, 966 F.3d 118, 130 (2d Cir. 2020) (cleaned up). In other words, "it is not essential that such a conspiracy shall contemplate a financial loss or that one shall result." *United States v. Coplan*, 703 F.3d 46, 60 (2d Cir. 2012) (quoting *Haas v. Henkel*, 216 U.S. 462, 479 (1910)). To the extent that Mr. Bishop proposes to opine that Weiner's taxable income was not understated by a "material" amount, *i.e.*, that no tax loss to the IRS resulted, such an opinion would communicate an incorrect legal theory. *See Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989) (it was an abuse of discretion to permit expert opinion testimony based on, inter alia, an incorrect negligence standard). It is legally irrelevant that the overstated management fees and personal expenses are large or small. The only question is whether Weiner agreed to overstate the fees and expenses on his tax returns.

### C. Mr. Bishop's Opinions Impermissibly Attempt to Establish Weiner's State of Mind or Offer Legal Opinion

Weiner proffers several opinions by Mr. Bishop that impermissibly attempt to establish the states of mind of various parties: of Weiner, of Haft, and of Pierre. Mr. Bishop proposes to opine that "tax payers commonly rely on their tax preparers to ensure that their tax returns are accurate and correct" (Ex. A. ¶ 3(g)); that "the tax preparer (Albert Haft) provided corrupt and unprofessional services to Nexray and the Weiners" (*id.* ¶ 3(h)); that "many of these General Ledger entries would lead a user to believe that Medical Reimbursement Consultants, Inc. (MRC) advanced far more money to Nexray than it actually did" (*id.* ¶ 3(k)); and that "the Financial Records are consistent with the conclusions that: (1) Nexray and the Weiners are victims of a financial fraud perpetrated by MRC; and (2) the tax preparer (Albert Haft) assisted MRC in committing that fraud." (*Id.* ¶ 3(l)). These opinions are a transparent attempt to argue, cloaked in expert opinion testimony, that the Weiners relied on Haft's tax advice; the Haft acted with corrupt

intent; that the Weiners were misled about how much money Nexray received from MRC; and that Pierre and Haft acted with fraudulent intent towards the Weiners.

All of these opinions are inadmissible "state of mind" opinions. *Am. Growth Funding II,* 2019 WL 1772509, at *1; *AFTRA Ret. Fund*, 2011 WL 6288415, at *8; *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 547. Mr. Bishop cannot reliably infer anyone's state of mind solely from the dry paper record of Nexray's financial documents. And, to the extent those financial records permit inferences about parties' states of mind, state of mind is a subject within the jury's expertise and not one for which expert opinion testimony is helpful.

Similarly, Mr. Bishop's opinion that "tax payers commonly rely on their tax preparers to ensure their tax returns are accurate and correct" is not an appropriate subject for expert testimony. The only witness who can assert a reliance defense on the stand is Weiner. Mr. Bishop is not a substitute. Indeed, Mr. Bishop's opinion about what "tax payers commonly" do is not relevant to the issue in this trial, which is whether Weiner agreed with Pierre and Haft to defraud the IRS by making false representations in tax filings and maintaining misleading books and records—including by claiming Nexray's payment of Weiner's country club fees, personal credit card bills, and car payments as legitimate Nexray business expenses for advertising, medical supplies, and medical equipment rental. If Weiner wishes to testify, he is free to do so. However, Mr. Bishop cannot raise a reliance defense for him.

Finally, Mr. Bishop's proffered opinions that "the tax preparer (Albert Haft) provided corrupt and unprofessional services to Nexray and the Weiners" (Ex. A. ¶ 3(h)), and that "the tax preparer (Albert Haft) failed to provide services to Nexray and the Weiners in compliance with the laws applicable to tax preparers, including IRS Circular 230" (*id.* ¶ 3(i)) contain inadmissible legal opinion testimony. IRS Circular 230 is a series of IRS regulations published in Code of Federal

Regulations, promulgated pursuant to 31 U.S.C. § 330. *See* INTERNAL REVENUE SERVICE, *Office of Professional Responsibility and Circular 230*, *available at* https://www.irs.gov/tax-professionals/office-of-professional-responsibility-and-circular-230. Whether Haft's services qualified as "corrupt" or whether or not they complied with § 330 or Part 10 of Title 31 of the Code of Federal Regulations is legal opinion testimony and inadmissible.

**CONCLUSION**

For the foregoing reasons, the proffered opinion testimony of Mr. Bishop should be excluded, or, in the alternative, Weiner should be compelled to provide a complete and unambiguous statement of Mr. Bishop's methodologies, sources, and conclusions as promptly as possible.

Dated: New York, New York
January 8, 2024

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By: /s/
Mathew Andrews
Qais Ghafary
Michael Lockard
Assistant United States Attorneys
Southern District of New York

# <u>EXHIBIT A</u>

**EXPERT DISCLOSURE FOR THOMAS BISHOP**

Defendant William Weiner ("Weiner") makes the following disclosures pursuant to Federal Rule of Evidence 16(b)(1)(C):

1. Weiner will call Thomas E. Bishop as an expert witness in this matter. Mr. Bishop served as a Special Agent in the IRS's Criminal Investigative Division (CID). Over the course of 25 years, he served in various roles, including as the Director of International Field Operations where overseeing global investigations, including the IRS's efforts in the Panama Papers investigation. He also served as the Acting Special Agent in Charge of the CID's New York Field Office, where he supervised a wide range of investigations, including those involving health care fraud and money laundering. Mr. Bishop has supervised or conducted several hundred criminal tax and money laundering investigations. He is a Certified Fraud Examiner and an Enrolled Agent certified to practice before the IRS who regularly conducts forensic investigations in a wide array of areas. Mr. Bishop has testified in both civil and criminal matters. In the criminal arena, he has testified both on behalf of the Government and the defense. Mr. Bishop's qualifications and prior testimony are further described in the Curriculum Vitae attached to this Expert Disclosure as Exhibit A.

2. Mr. Bishop has performed a forensic examination of the books and records of Nexray Medical Imaging, P.C. ("Nexray") pursuant to the standards and

methodologies utilized by Certified Fraud Examiners. The documents at issue include Nexray's General Ledger, Trial Balances, financial reports, ledgers, accounting records (including work papers), tax returns, QuickBooks files, and bank account records (including bank statements, check stubs, and copies of checks) (collectively, the "Financial Records"). Mr. Bishop's testimony will be based on his examination and analysis of these materials.

3. Mr. Bishop will offer factual testimony regarding the Financial Records, including a money flow analysis. In addition, based on his experience expertise, and forensic examination of the Financial Records, he will opine that:

a. the Government's allegations as to the amount by which Nexray allegedly overstated "management fees" are inaccurate and material to the overall calculations;

b. the Government's allegations regarding the amounts that Nexray allegedly deducted as improper personal expenses are inaccurate and material to the overall calculations;

c. Nexray's tax returns and accounting records reflect numerous errors (including, but not limited to, classification errors) and inconsistencies;

d. Many of these errors and inconsistencies caused William and Lois Weiner to pay more in income taxes than they would have paid had the errors not occurred;

e. The Financial Records include documents with accurate and detailed information regarding corporate and personal expenditures;

f. The Financial Records are sufficiently clear, detailed, and accurate such that a reasonably competent tax preparer could have prepared accurate tax returns;

g. Tax payers commonly rely on their tax preparers to ensure that their tax returns are accurate and correct;

h. The tax preparer (Albert Haft) provided corrupt and unprofessional services to Nexray and the Weiners;

i. The tax preparer (Albert Haft) failed to provide services to Nexray and the Weiners in compliance with the laws applicable to tax preparers, including IRS Circular 230;

j. The Financial Records contain numerous General Ledger entries that are inaccurate, inappropriate, and/or inconsistent;

k. Many of these General Ledger entries would lead a user to believe that Medical Reimbursement Consultants, Inc. (MRC) advanced far more money to Nexray than it actually did; and

l. The Financial Records are consistent with the conclusions that: (1) Nexray and the Weiners are victims of a financial fraud perpetrated by MRC; and (2) the tax preparer (Albert Haft) assisted MRC in committing that fraud.

4. In connection with his testimony, Mr. Bishop may prepare and offer summaries of the voluminous records he has examined, including bank records, accounting ledgers, and financial documents. Such summaries will be offered pursuant to Federal Rule of Evidence 1006.

5. Mr. Bishop may attend the testimony of the Government's IRS or FBI agents, and may offer additional opinions and/or summary charts in response to the testimony given by the government's witnesses.

Dated: January 4, 2024

Respectfully Submitted,

Thomas E. Bishop

# **EXHIBIT B**

# THOMAS E. BISHOP, CFE, EA
# STATEMENT OF QUALIFICATIONS

Mr. Bishop is a former (retired) IRS Special Agent, a Certified Fraud Examiner, an Enrolled Agent certified to practice before the IRS, and eligible to receive NYS Court appointments. He specializes in investigative, forensic accounting, and litigation support, for public and private sector clients. He focuses predominantly on tax advocacy and controversy and white-collar litigation consulting services to attorneys with clients involved in civil and criminal matters. Mr. Bishop has over 30 years of combined federal law enforcement and private sector experience and recently established his firm, Tom Bishop & Associates LLC.

## ***Industry Involvement***

Tom frequently lectures and presents on federal criminal tax and white-collar investigative matters, as well as international tax administration, offshore banking and the IRS Voluntary Disclosure Program to industry organizations. These organizations include the American Bar Association; New York City Bar Association; Nassau County Bar Association; Suffolk County Bar Association; New York State Society of CPAs; the Florida International Bankers Association; and the Practising Law Institute.

## ***Education***

- Bachelor of Science, Accounting – Penn State University 1990

## ***Employment Background & Experience***

- President, Tom Bishop & Associates LLC, East Islip, NY, with a focus on tax controversy and advocacy, white collar litigation support and forensic accounting services. (Established December 2022)

- Managing Director, BDO USA, LLP, New York, NY, concentrating on forensic investigation, tax controversy, investigative and litigation support. (March 2021 to December 2022

- Director, Baker Tilly US, LLP, New York, NY, concentrating in tax controversy, investigative and litigation support. (January 2017- March 2021)

- Director, International Field Operations, IRS Criminal Investigation (IRS CI), Washington DC. Senior IRS CI official responsible for the oversight of all IRS CI international investigative activities involving countries in the western hemisphere. (2016). The IRS CI Executive in charge of the “Panama Papers” investigation. Retired in good standing on December 31, 2016.

- Assistant Special Agent in Charge, IRS Criminal Investigation, New York, NY Responsible for all regional field operations, including the investigative, administrative and HR matters for NYC, Long Island, and Western New York, covering four federal judicial districts. (2012 – 2016). Headed the IRS International

Financial Fraud Task Force, responsible for the investigations of over a dozen Swiss, Lichtenstein, and Caribbean financial institutions, as well as the recovery of over $1 Billion in taxes, penalties and forfeitures to the US Government.

- Supervisory Special Agent, IRS Criminal Investigation, New York, NY. Front line supervisor responsible for daily investigative activities ten IRS CI special agents. Provide direct oversight and guidance to team members related to complex financial investigations including tax evasion/fraud, money laundering, public corruption and construction related financial frauds. (2005 – 2012)

- Special Agent, IRS Criminal Investigation, New York, NY. Conducted complex financial investigations involving violations of the Internal Revenue Code and related financial crimes including money laundering and Bank Secrecy Act violations. Testified before grand jury and in jury trials. Collaborated with the United States Attorney's office and the Department of Justice, Tax Division. (1991 – 2005)

***Trial Testimony for the Government***

- US District Court, Eastern District of NY & Southern District of NY
    - US v. Meneilly, et al
    - US v. Isernio, et al
    - US v. Friemann

***Trial Testimony for the Defense***

- US v. Wedd, et al (SDNY – April 2017, August 2017 and November 2017)
- US v. Gyetvay (Middle District of Florida, March 2023)
- US v. Khwaja (EDNY - April 2023)

***Civil Testimony***

- Deposition, Superior Court, Mecklenburg, North Carolina
  Kixsports, LLC v. Ryan Munn, Tyler Vaughn (17-CVS-16373) (July 2019)

***Professional Activities***

- Mr. Bishop is Certified Fraud Examiner (CFE) and a member of the Association of Certified Fraud Examiners.
- IRS Enrolled Agent (EA) (December 2016 – present)
- NYS Unified Court System Appointment Eligible – Accountant

# **EXHIBIT C**

# United States District Court
## SOUTHERN DISTRICT OF NEW YORK

TO: **CUSTODIAN OF RECORDS FOR: Nexray Medical Imaging and/or EIN# 45-1454249**

GREETINGS:

WE COMMAND YOU that all and singular business and excuses being laid aside, you appear and attend before the GRAND JURY of the people of the United States for the Southern District of New York, at the United States Courthouse, 40 Foley Square, Room 220, in the Borough of Manhattan, City of New York, New York, in the Southern District of New York, at the following date, time and place:

Appearance Date: March 30, 2021 Appearance Time: 10:00 a.m.

to testify and give evidence in regard to an alleged violation of federal criminal law and not to depart the Grand Jury without leave thereof, or of the United States Attorney, and that you bring with you and produce at the above time and place the information on the Attached Rider.

N.B.: Personal appearance is not required if the requested records are produced on or before the return date to Nicole Valente, Special Agent, IRS-CI, 300 Commerce Drive, New Windsor, NY 12553, (Phone) 845-440-2485, (Fax) 845-440-2479, nicole.valente@ci.irs.gov and (2) accompanied by an executed copy of the attached Declaration of Custodian of Records. **<u>Please provide the requested documents in electronic format.</u>**

Failure to attend and produce any items hereby demanded will constitute contempt of court and will subject you to civil sanctions and criminal penalties, in addition to other penalties of the Law.

DATED: New York, New York
March 15, 2021

/s/
AUDREY STRAUSS
*United States Attorney for the*
*Southern District of New York*




Mathew Andrews
Assistant United States Attorney
Southern District of New York
(212) 637-6526

ATTACHMENT TO SUBPOENA ISSUED TO: **CUSTODIAN OF RECORDS FOR: Nexray Medical Imaging and/or EIN# 45-1454249**

FOR THE YEARS: **2014 - 2020**

1) All corporate bookkeeping records and other financial records, including but not limited to:
    a. **A digital backup of digital bookkeeping software used, such as Quickbooks**
    b. General Ledgers, <u>by year</u>
    c. Profit & Loss Statements/Income & Expense Statements, <u>by year</u>
    d. Balance Sheets, <u>by year</u>
    e. Sales Receipts/Sales Journals, <u>by year</u>
    f. Expense Receipts/Invoices/Expense Journals, <u>by year</u>
    g. Copies of all Federal income and payroll tax returns
        i. **Provide <u>all</u> records and workpapers used in the preparation of the business' Federal income and payroll tax returns <u>which tie to the numbers reported on those returns</u>**

2) The **most recent (or final) monthly statement** for any and all **bank accounts** that received business income (reported and/or not reported) and/or which paid business expenses (reported and/or not reported), whether in the name of the business or not, between January 1, 2014 and December 31, 2020.

3) The **most recent (or final) monthly statement** of any and all **credit cards** paid for with business funds, whether in the name of the business or not. This includes credit cards of employees, owners, associates, etc. which were paid for with business funds between January 1, 2014 and December 31, 2020.

4) Employee records, including but not limited to:
    a. Rosters
    b. Timekeeping records
    c. Payroll logs
    d. The most recent (or final) monthly statement for any and all bank accounts that payroll was issued from between January 1, 2014 and December 31, 2020.

5) Records related to non-employee services from contractors, consultants, etc., including but not limited to:
    a. Contracts/Agreements
    b. Timekeeping records
    c. Invoices, Bills, Receipts
    d. <u>If there is nothing available to produce, note that in the subpoena response</u>.

6) Documentation related to the purchase or sale of any tangible assets purchased with business funds (or funds held in a business account), whether those assets were purchased for the business or on behalf of an entity or individual other than the business (ex. property, buildings, cars, recreational vehicles, equipment, etc.).

7) Loan records for **loans TO and/or FROM** the business, including but not limited to: **loan agreements**, **contracts**, **notes**, applications, financial statements, tax returns, loan collateral information and/or documents, copies of checks and/or wire detail and/or receipts for cash used to issue and/or repay loans and any/all correspondence (ex. emails, letters, faxes, etc.) relative to these loans.

8) Any and all records related to the parties listed on Attachment #1, including but not limited to:
   a. Accounting ledgers, by party
   b. Invoices, Bills, Receipts
   c. Copies of checks, wire detail and/or cash receipts
   d. Any and all loan documents (if not already produced per #7)
   e. Contracts
   f. Agreements
   g. Tax documents

9) Any and all documents related to cash deposits and withdrawals, including but not limited to:
   a. Invoices, Bills, Receipts
   b. Timekeeping and/or any payroll records for payroll paid for with cash
   c. Ledger accounts that included cash deposits and/or withdrawals

**RECORD FORMAT: Records are requested in digital format with file names that adequately identify the file (ex. Jan 2016 Statement Acct End 1234)(ex. Signature Card Acct End 1234). Data may be provided on CD or DVD or sent via a secure link. If available, please provide transactional data in .xlsx (Excel) format. Include an inventory of the documents provided.**

**IN LEIU OF APPEARANCE, RECORDS MAY BE PROVIDED TO:**
**Nicole Valente**
**Special Agent, IRS-CI**
**300 Commerce Drive**
**New Windsor, NY 12553**
**(Phone) 845-440-2485**
**(Fax) 845-440-2479**
**nicole.valente@ci.irs.gov**

Declaration of Custodian of Records

Pursuant to 28 U.S.C. § 1746, I, the undersigned, hereby declare:

My name is ________________________________________.
(name of declarant)

I am a United States citizen and I am over eighteen years of age. I am the custodian of records of the business named below, or I am otherwise qualified as a result of my position with the business named below to make this declaration.

I am in receipt of a Grand Jury Subpoena, dated March 6, 2021, and signed by Assistant United States Attorney Mathew S. Andrews requesting specified records of the business named below. Pursuant to Rules 902(11) and 803(6) of the Federal Rules of Evidence, I hereby certify that the records provided herewith and in response to the Subpoena:

(1) were made at or near the time of the occurrence of the matters set forth in the records, by, or from information transmitted by, a person with knowledge of those matters;

(2) were kept in the course of regularly conducted business activity; and

(3) were made by the regularly conducted business activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___________________.
(date)

________________________________________
(signature of declarant)

________________________________________
(name and title of declarant)

________________________________________
(name of business)

________________________________________
(business address)

________________________________________

________________________________________

Definitions of terms used above:

As defined in Fed. R. Evid. 803(6), "record" includes a memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses. The term "business" as used in Fed. R. Evid. 803(6) and the above declaration includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

# EXHIBIT D



Mayer Brown LLP
1999 K Street, N.W.
Washington, DC 20006-1101
United States of America

T: +1 202 263 3000
F: +1 202 263 3300

mayerbrown.com

**Kelly B. Kramer**
Partner
T: +1 202.263.3007
kkramer@mayerbrown.com

December 19, 2023

**BY EMAIL**

Mathew Andrews
Assistant U.S. Attorney
U.S. Attorney's Office for the Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

Re: United States v. William Weiner, 22 Cr. 19 (PGG)

Counsel:

We write on behalf of our client, Dr. William Weiner, to produce additional documents that we recently located while preparing for trial that are potentially responsive to the grand-jury subpoena you issued to Nexray Medical Imaging, P.C., on March 30, 2021. Please find enclosed a link to the production bearing Bates numbers Weiner_0000001-Weiner_0000386.

A password to the production will be sent under separate cover.

Sincerely,

Kelly B. Kramer
*Counsel to Dr. William Weiner*

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership) and Tauil & Chequer Advogados (a Brazilian partnership).