

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 10, 2024

**<u>VIA ECF</u>**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

     Re: <u>*United States v. William Weiner,*</u>
        <u>22 Cr. 19 (PGG)</u>

Dear Judge Gardephe:

  The Government writes in response to the Court's order (Dkt. 351) stating:

  With respect to the (S3) Indictment (Dkt. No. 282), the Government is directed to make a submission . . . explaining why joinder under Rule 8(b) of the Federal Rules of Criminal Procedure is appropriate in light of *United States v. Rittweger*, 524 F.3d 171 (2d Cir. 2008).

  The *Rittweger* case discusses multiple components of Rule 8(b). Based on defendant William Weiner's motion for severance (Dkt. 303), it appears that Weiner's principal argument under *Rittweger* is that the Court may not consider the speaking allegations in the Second Superseding Indictment (the "S2 Indictment") because the Third Superseding Indictment (the "S3 Indictment") does not repeat the allegations verbatim. (*See* Dkt. 303 ("To be sure, the Government may argue that there is some connection between the schemes, but Rule 8(b) is a pleading rule, and determining whether joinder is proper 'turns on what is 'alleged' in the 'indictment''—not what the Government argues." (quoting *Rittweger*, 524 F.3d at 178)).

  The Second Circuit's *Rittweger* addressed an entirely different fact pattern than here. The defendants argued that they were misjoined because the Government's evidence at trial did not support the allegations plead in the indictment. *See* 524 F.3d at 178 ("[T]o the extent that [the defendants] rely on the evidence (or lack thereof) adduced at trial to argue that they were improperly joined as defendants, their reliance is misplaced."). In this context, the *Rittweger* Court held that "[e]vents that transpire at trial are thus not relevant to the Rule 8(b) inquiry." *Id.*

  The question here, however, is whether the Court can consider the allegations in a previous indictment. Although this is a matter of first impression, the answer is yes. When a superseding indictment is filed, the original indictment remains valid. *United States v. Vavlitis,* 9 F.3d 206, 209 (1st Cir.1993). "[A]lthough a second indictment is often said to 'supersede' the first, it does not dispose of it without an express quashal." *United States v. Strewl,* 99 F.2d 474, 477 (2d Cir. 1938).

There is "no authority which supports the proposition that a superseding indictment zaps an earlier indictment to the end that the earlier indictment somehow vanishes into thin air." *United States v. Bowen,* 946 F.2d 734, 736 (10th Cir. 1991). Moreover, when evaluating joinder, there is nothing in Rule 8(b) that prohibits the Court from evaluating prior pleadings. Rule 8(b) states that the "indictment or information may charge 2 or more defendants if they *are alleged* to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b) (emphasis added). Rule 8(b) does not state that the allegations must be in a single charging instrument. Instead, it simply uses the passive voice—if the defendants "are alleged . . . ."

Here, the defendants *are alleged* to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The S2 Indictment alleges that Arthur Bogoraz and Bradley Pierre worked together with Anthony Rose to bribe hospital employees, 911 operators, and the like for confidential information about motor vehicle accident victims. (*See, e.g.*, S2 Indictment ¶¶ 1-5). Bogoraz, Pierre, and Rose then steered victims to receive treatment at a variety of medical facilities including Nexray (where the healthcare fraud took place). (*Id.*). Pierre unlawfully controlled Nexray and arranged for William Weiner to falsify injuries in MRI reports so that medical facilities could conduct unnecessary medical treatments and attorneys could file fraudulent lawsuits for damages—all of which benefited Pierre, Bogoraz, and others. (*Id.*).

Moreover, it is immaterial that Bogoraz and Weiner are not charged in the same conspiracy. "Provided that the defendants are 'alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses,' Fed. R. Crim. P. 8(b), members of two or more conspiracies may be joined as defendants even where the members have not been charged as participating in one overarching conspiracy." *Rittweger*, 524 F.3d at 177–78. Here, the bribery and healthcare fraud schemes "arise out of a common plan or scheme," *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir. 1989), because "one of the offenses 'depend[s] upon [] or necessarily [leads] to the commission of the other.'" *United States v. Shellef*, 507 F.3d 82, 98 (2d Cir. 2007) (quoting *United States v. Halper*, 590 F.2d 422, 429 (2d Cir. 1978)) (alterations in *Shellef*). The healthcare fraud scheme involving Nexray was not possible without the steady stream of unsuspecting victims supplied by the bribery scheme. The bribery scheme, in turn, was not possible without the illegal proceeds generated by the healthcare fraud. This is a more than sufficient basis for joinder.

In any event, even if the Court did not consider the S2 Indictment, the S3 Indictment contains sufficient allegations to show that the bribery and healthcare fraud schemes "arise out of a common plan or scheme," *Attanasio*, 870 F.2d at 815 (brackets omitted), because "one of the offenses 'depend[s] upon [] or necessarily [leads] to the commission of the other.'" *Shellef*, 507 F.3d at 98 (quoting *Halper*, 590 F.2d at 429 (alterations in *Shellef*)). The S3 Indictment charges Bradley Pierre and William Weiner with participating in a healthcare fraud conspiracy in Count One. (S3 Indictment ¶¶ 1-2). The S3 Indictment then states that "during and in relation to the healthcare fraud conspiracy charged in Count One, [Pierre] caused Runners to bribe 911 operators, hospital employees, and others for the names and phone numbers motor vehicle accident victims and use these unlawfully acquired means of identification to induce victims to seek medical treatment from the No-Fault Clinics." (*Id.* at ¶ 11). The S3 Indictment further specifies that Pierre

and Bogoraz both participated in the bribery conspiracy: Pierre and Bogoraz knowingly did "facilitate the promotion, management, establishment, and carrying on of an unlawful activity, to wit, a bribery scheme . . . whereby employees or agents of hospitals, the NYPD, emergency medical services, and other entities disclosed protected, confidential information of tens of thousands of motor vehicle accident victims in New York, New Jersey, and elsewhere in exchange for payment." (*Id.* at ¶ 7). As such, the S3 Indictment draws a clear line between the bribery and healthcare fraud offenses and alleges that "one of the offenses 'depend[s] upon [] or necessarily [leads] to the commission of the other.'" *Shellef*, 507 F.3d at 98 (quoting *Halper*, 590 F.2d at 429 (alterations in *Shellef*)).  This is more than sufficient to satisfy the "commonsense rule" set forth in *Rittweger* concerning proper joinder under Rule 8(b). 524 F.3d at 177.

      For the foregoing reasons, the Government respectfully submits that Weiner's motion for severance should be denied.

                                        Respectfully submitted,
                                        DAMIAN WILLIAMS
                                        United States Attorney

By:           /s/
                        MATHEW ANDREWS
                        MICHAEL LOCKARD
                        QAIS GHAFARY
                        Assistant United States Attorney
                        Tel.   (212) 637-6526