

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 12, 2024

**VIA ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. William Weiner,*
               22 Cr. 19 (PGG)

Dear Judge Gardephe:

      The Government writes in connection with its motion to preclude the expert testimony of Dr. Bryan Pukenas. (*See* Dkt. 331). The Government has reviewed Dr. Pukenas' supplemental disclosure, which provides the MRI-by-MRI analysis compelled by the Court. (*See* Ex. A, the "Supplemental Disclosure"). The Supplemental Disclosure does not address the objections raised in the Government's motion.

      As the Court is aware, the Government moved on multiple grounds to exclude Dr. Pukenas' testimony. The MRI-by-MRI analysis is only relevant to the Government's second objection—namely, that the Court should preclude Dr. Pukenas from asserting that his level of disagreement with Dr. Weiner "was consistent with that which is reported in the literature and in line with [his] own experience as a practitioner" because he has not shown that his opinion is the product of reliable principles and methods. (Dkt. 331 at 7). As the Government's motion set forth:

> A comparison of Dr. Coyne and Dr. Pukenas' findings shows the glaring differences in testimony. Dr. Coyne's reports set forth exactly how many times Dr. Coyne disagreed with Dr. Weiner and why: out of nearly 93 randomly selected MRI studies by Dr. Weiner, Dr. Coyne found that approximately 90 of the studies had false findings of herniations that were not present. Dr. Coyne will further testify that he has regularly conducted peer reviews of radiologists during his nearly 15 years as chairman of radiology for three different hospitals, and in that extensive experience, this overwhelming pattern of false findings of herniations is unprecedented.
>
> By contrast, Dr. Pukenas does not identify or quantify the number of MRI studies by Dr. Weiner where Dr. Pukenas found false findings of herniations. Dr. Pukenas likewise provides no information about "his own experience as a practitioner," beyond the generic statement that he has "conduct[ed] peer reviews of other

>radiologists' work in both an academic and clinical setting." (Pukenas Report at 1). Tellingly, the Pukenas Report does not state how often Dr. Pukenas disagrees with other radiologists in peer reviews, or how often he sees other radiologists incorrectly identified herniations that were not present in peer reviews (the subject matter of this case). As such, the Pukenas Report offers nothing more than, "believe me, I'm a doctor," to support his methodology.

(*Id.* at 7-8). Although Dr. Pukenas has done an MRI-by-MRI analysis, he still has failed to explain how his findings are "consistent with that which is reported in the literature and in line with [his] own experience as a practitioner." Based on the Government's preliminary review of the Supplemental Disclosure, Dr. Pukenas *disagreed* either completely or partially with Weiner's findings in approximately 66 of the 91 MRIs he reviewed—or 72%. These disagreements include that Weiner reported herniations that were not present and failed to report degeneration that was.

This percentage is shocking, and Dr. Pukenas does not describe how this number is consistent with his "peer reviews of other radiologists' work in both an academic and clinical setting" or the "academic literature." Dr. Pukenas has yet to explain how often he disagrees with other radiologists in peer reviews, or how often he sees other radiologists incorrectly identify herniations that were not present or fail to identify degeneration (the subject matter of this case). Dr. Pukenas likewise continues to mischaracterize the academic literature. Thus, for instance, defense counsel claims in its opposition:

>Dr. Pukenas reviewed a study comparing the accuracy of radiologists' MRI reads to open surgical visualization when evaluating lumbar disk containment (herniation). See J. Orthop. Surg. 2008; 3:46 (attached as Ex. D). That study stated that: "Overall, sensitivity was 72%, specificity 68%, and accuracy 70% for MR imaging in detecting containment of herniated lumbar discs. The true positive rate was .72 and the false positive rate was *.33*." *Id.* (emphasis added).

(Dkt. 354 at 9). Even if this 33% figure were correct, it is far less than the approximately 72% here. But again, Dr. Pukenas is misciting the academic literature. The article is not discussing how often radiologists incorrectly identify herniations *that are not present at all*—the issue in this case. The article is discussing how often radiologists incorrectly identify a particular type of herniation: "non-contained" herniations that have extruded disc material into the disc space. (Dkt. 354, Ex. D at 3). Weiner is not charged with falsifying "non-contained" herniations on his reports, and statistics about such herniations are completely irrelevant. Dr. Pukenas is again comparing apples with bowling balls.

      The Government reiterates each of its objections to Dr. Pukenas' testimony and respectfully requests that the Court preclude it under Rule 702.

.

                                        Respectfully submitted,
                                        DAMIAN WILLIAMS
                                        United States Attorney

By:              /s/
                          MATHEW ANDREWS
                          MICHAEL LOCKARD
                          QAIS GHAFARY
                          Assistant United States Attorney
                          Tel.    (212) 637-6526